UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

UNITED STATES OF AMERICA,                              Case No: 18-CR-485 (LAP)

               -against-

MOSHE BENENFELD,

                          Defendant.

------------------------------------------------------------------------x


### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT MOSHE BENENFELD'S MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A)


**TWERSKY PLLC**
747 Third Avenue, 32nd Floor
New York, New York  10017
(212) 425-0149

*Attorneys for Defendant Moshe Benenfeld*


Of Counsel:
     Aaron Twersky, Esq.
     Jason Lowe, Esq.
     Ilana Neufeld, Esq.

## TABLE OF CONTENTS

**BACKGROUND AND FACTS** ........................................................................... 2

    **A.** Updated COVID-19 Statistics.................................................................. 2

    **B.** Moshe Benenfeld's Severe Medical Issues............................................ 3

    **C.** The Second Attorney General Memorandum ....................................... 4

    **D.** Benenfeld's Home Confinement Plan ................................................. 6

**ARGUMENT** ................................................................................................. 8

**POINT I**

**EXHAUSTION OF ADMINISTRATIVE REMEDIES
UNDER 18 U.S.C. § 3582 (c)(1)(A) IS WAIVED BECAUSE
OF THE URGENT RISK OF FATAL INFECTION** ................................. 8

**POINT II**

**THIS COURT HAS AUTHORITY TO RESENTENCE
BENENFELD UNDER 18 U.S.C. § 3582(c)(1)(A)(i) FOR
THE "EXTRAORDINARY AND COMPELLING REASONS"
CREATED BY THE COVID-19 PANDEMIC AND PRISON CONDITIONS
WHICH PREVENT SELF-CARE FOR A HIGH RISK PATIENT** ...................... 12

**CONCLUSION** ........................................................................................ 16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

UNITED STATES OF AMERICA,                          Case No: 18-CR-485 (LAP)

                        -against-

MOSHE BENENFELD,

                              Defendant.
-------------------------------------------------------------------------x

### REPY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT MOSHE BENENFELD'S MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A)

Defendant Moshe Benenfeld ("Benenfeld"), by and through his counsel of record, Twersky PLLC, submits this reply memorandum of law in further support of his Motion for Compassionate Release (the "Motion"). It is undisputed that since the Motion's filing on April 3, 2020, the COVID-19 pandemic has only grown stronger and fiercer. It is also undisputed that Moshe Benenfeld suffers from a host of very serious medical issues which leave him immune-compromised and in the class of people who would very likely die if they were to contract COVID-19.[1] In light of the numerous updates since the Motion's filing, enumerated below, and for all the reasons stated in the Motion, Benenfeld respectfully requests that the Court grant the Motion under 18 U.S.C. § 3582(c)(1)(A) and order the remainder of his sentence to be served under home confinement and incarceration, with the strict confinement plan detailed below in place.

---

[1]     *See Severe Outcomes Among Patients with Coronavirus Disease 2019 (COVID-19) – United States, February 12-March 16, 2020*, Centers for Disease Control and Prevention Report, available at https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e2.htm (Data from China have indicated that older adults, **particularly those with serious underlying health conditions**, are at higher risk for severe COVID-19 associated illness and death than are younger persons (emphasis added).

## BACKGROUND AND FACTS

### A. Updated COVID-19 Statistics

Since this Motion was filed on April 3, 2020, the COVID-19 pandemic has not slowed down and has only worsened. As of April 8, 2020 at 8:17 am, "[t]he coronavirus pandemic has sickened more than 1.4 million people, according to official counts . . . [and] at least 83,000 people have died" worldwide.[2] In the United States, 397,754 cases have been reported, with 12,956 deaths.[3] In Massachusetts, as of April 7, 2020, there have been 15,202 positive cases of COVID-19 and 356 deaths. Middlesex County, where FMC Devens ("Devens") is located, has the highest amount of COVID-19 cases of any county in Massachusetts, with 3,187.[4]

The dangers of being in prison during a worldwide pandemic are well documented and will not be repeated here.[5] However, what does bear repeating is that *Moshe Benenfeld, a 51 year old man who suffers from a host of medical conditions and is currently incarcerated, is extremely vulnerable to the COVID-19 pandemic and may die if he contracts the deadly virus.* It is not hyperbole to state that Benenfeld has a high likelihood of contracting COVID-19 in

---

[2]     *See Coronavirus Map: Tracking the Spread of the Outbreak*, The New York Times, available at https://www.nytimes.com/interactive/2020/world/coronavirus-maps.html (updated regularly).
[3]     *See id*.
[4]     *See COVID-19 cases in Massachusetts*, available at https://www.mass.gov/info-details/covid-19-cases-quarantine-and-monitoring (updated daily).
[5]     *See* Barbara Bradley Hagerty, *Innocent Prisoners Are Going to Die of the Coronavirus*, The Atlantic (March 31, 2020), available at https://www.theatlantic.com/ideas/archive/2020/03/americas-innocent-prisoners-are-going-die-there/609133/; *see also* Nicole Wetsman, *Prisons and Jails are Vulnerable to COVID-19 Outbreaks*, The Verge (March 7, 2020), available at https://www.theverge.com/2020/3/7/21167807/coronavirus-prison-jail-health-outbreak-covid-19-flu-soap; *see also* Michael Kaste, *Prisons and Jails Worry About Becoming Coronavirus 'Incubators,'*" NPR (March 13, 2020), available at https://www.npr.org/2020/03/13/815002735/prisons-and-jailsworry-about-becoming-coronavirus-incubators; *see also* Peter Wagner & Emily Widra, *No Need to Wait For Pandemics: The Public Health Case for Criminal Justice Reform*, Prison Policy Initiative (March 6, 2020), available at https://www.prisonpolicy.org/blog/2020/03/06/pandemic; *see also An Epicenter of the Pandemic Will Be Jails and Prisons, If Inaction Continues*, The New York Times (March 16, 2020), available at https://www.nytimes.com/2020/03/16/opinion/coronavirus-in-jails.html; *see also* Joseph A. Bick, *Infection Control in Jails and Prisons*, Clinical Infectious Diseases 45(8): 1047-1055 (2007), available at https://academic.oup.com/cid/article/45/8/1047/344842.

prison.  In fact, every day, more and more federal inmates in the custody of the Federal Bureau of Prisons ("BOP") test positive for COVID-19.  In fact, the number of COVID-19 cases in BOP institutions is "rising exponentially, at a pace far surpassing the U.S. population at large" and increasing at a much steeper rate much quicker than the general population overall – as of April 7, 2020, 15550% vs. 1963%.[6]  This means that an inmate in a BOP facility is much more likely to contract COVID-19 than an individual not incarcerated.

As of April 7, 2020, there are 241 inmates and 73 staff members in the BOP system who have tested positive for COVID-19, with at least 8 deaths.[7]  However, "because testing has been grossly insufficient [within the BOP,] these numbers are almost certainly an undercount."[8]  As of April 5, 2020, there have been 39 COVID-19 cases within the Massachusetts Department of Correction facilities, where there have been at least 3 inmate deaths.[9]

### B. Moshe Benenfeld's Severe Medical Issues

Benenfeld's multiple health issues are well documented and will not be repeated at length again here.  However, the Court is reminded that Moshe Benenfeld is severely immuno-compromised as a result of his many medical diagnoses, including a severe bladder condition, bladder cancer (which necessitated the removal of his bladder), small fiber nerve neuropathy (a nerve condition that attacks the hands and legs), multisystem atrophy and paresthesia and

---

[6]     *See* Lisa Freeland, David Patton and Jon Sands, *We'll see many more covid-19 deaths in prisons if Barr and Congress don't act now*, The Washington Post (April 6, 2020), available at https://www.washingtonpost.com /opinions/2020/04/06/covid-19s-threat-prisons-argues-releasing-at-risk-offenders/; *see also* Chart, *Percentage of Increase of Infected BOP People (Inmates and Staff) Since 3/20/2020* and Chart, *Percentage of Infected People Since 3/20/2020* (updated daily), available at https://federaldefendersny.org/.

[7]     *See COVID-19 Tested Positive Cases*, available at https://www.bop.gov/coronavirus/ (updated daily).

[8]     *See* Lisa Freeland, David Patton and Jon Sands, *We'll see many more covid-19 deaths in prisons if Barr and Congress don't act now*, The Washington Post (April 6, 2020), available at https://www.washingtonpost.com /opinions/2020/04/06/covid-19s-threat-prisons-argues-releasing-at-risk-offenders/.

[9]     *See* Arianna McNeil, *Third Mass. inmate with COVID-19 dies; stricter social distancing to be enforced at all facilities*, Boston.com (April 5, 2020), available at https://www.boston.com/news/local-news/2020/04/05/third-inmate-dies-massachusetts-coronavirus.

tremors of his hands and legs.  Benenfeld has also been treated for recurrent multidrug resistant bacteria numerous times and is wheel-chair bound.

Benenfeld's primary care internist, Dr. Jacqueline M. Mayo writes, "I am very concerned about [Benenfeld] being incarcerated during the COVID-19 pandemic, as *he is at very high risk of serious complications and mortality were he to contract this illness* . . . *The crowded and unsanitary conditions of prison put Mr. Benenfeld at high risk at all times, and during the COVID-19 crisis his risk of very serious complication including death is unacceptably high*." *See* Exhibit A to the Declaration of Aaron Twersky, Esq. ("Twersky Decl.") Letter from Dr. Jacqueline M. Mayo, dated April 3, 2020 (emphasis added).  *As Dr. Mayo states, given Benenfeld's serious medical conditions, when (and not if) the COVID-19 virus spreads through Devens, it is more likely than not that he will not survive*.

In sentencing Moshe Benenfeld to 63 months in prison, this Court did not intend to impose a death sentence on him.  However, because of his extreme medical diagnosis and conditions, coupled with the unthinkable spread of a global pandemic that is killing people with pre-existing medical conditions at alarming rates, *Moshe Benenfeld faces a serious risk of dying in prison if infected with COVID-19*.[10]

### C.  The Second Attorney General Memorandum

Since Benenfeld filed this Motion, the Office of the Attorney General has issued a second, updated Memorandum to the Director of the Bureau of Prisons, titled "Increasing Use of Home Confinement at Institutions Most Affected by COVID-19," dated April 3, 2020 (the

---

[10]     *See Severe Outcomes Among Patients with Coronavirus Disease 2019 (COVID-19) – United States, February 12-March 16, 2020*, CDC Report, available at https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e2.htm ("Data from China have indicated that older adults, *particularly those with serious underlying health conditions*, are at higher risk for severe COVID-19–associated illness and death than are younger persons") (emphasis added).

"Second AG Memo").  *See* Exhibit B to the Twersky Decl., Second AG Memo.

In the Second AG Memo, Attorney General William P. Barr himself acknowledges the "significant levels of infection [of COVID-19] at several of our [BOP] facilities."  *See* Exhibit B, Second AG Memo, p. 1.  Attorney General Barr goes on to state that "the CARES Act now authorizes me to expand the cohort of inmates who can be considered for home release upon my finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons.  I hereby make that finding and ***direct that, as detailed below, you give priority in implementing these new standards to the most vulnerable inmates***."  *See* Exhibit B, Second AG Memo, p. 1. (emphasis added)  It is patently clear that Moshe Benenfeld falls squarely into this category of "most vulnerable inmates."

Attorney General Barr continues,

> I am therefore directing you to ***immediately review all inmates who have COVID-19 risk factors, as established by the CDC*** . . .  ***your review should include all at-risk inmates-not only those who were previously eligible for transfer***.  For all inmates whom you deem suitable candidates for home confinement, ***you are directed to immediately process them for transfer and then immediately transfer them*** following a 14-day quarantine at an appropriate BOP facility, or, ***in appropriate cases subject to your case-by-case discretion, in the residence to which the inmate is being transferred*** . . . Your assessment of these inmates should thus be guided by the factors in my March 26 Memorandum, understanding, though, that ***inmates with a suitable confinement plan will generally be appropriate candidates for home confinement rather than continued detention at institutions in which COVID-19 is materially affecting their operations***.

*See* Exhibit B, Second AG Memo, p. 2 (emphasis added).  According to the Second AG Memo, ***it is clear that Benenfeld is an at-risk inmate who should be immediately released on home confinement***.  It is also appropriate in this case to immediately transfer him to the residence where he will be confined to and not quarantine him within the BOP.  Given his medical conditions, Benenfeld's confinement plan consists of living in an apartment attached to his

daughter's home, alone and in complete isolation.  His full confinement plan is explained below.

The Second AG Memo also "recognizes that BOP has limited resources to monitor inmates on home confinement" and that the U.S. Probation Office faces similar challenges.  *See* Exhibit B, Second AG Memo, p. 2.  However, Attorney General Barr still orders the immediate transfer of "inmates to home confinement even if electronic monitoring is not available, so long as BOP determines in every such instance that doing so is appropriate and consistent with our obligation to protect public safety."  *Id*.  In other words, even if electronic G.P.S. monitoring is not available, that fact should not be an impediment or deterrent to the release and transfer of non-violent offenders, like Moshe Benenfeld.  Benenfeld is a non-violent, first time offender and is certainly not a danger to the public, especially in light of the fact that he is wheelchair bound.

Attorney General Barr concludes, "Given the speed with which this disease has spread through the general public, ***it is clear that time is of the essence*.  Please implement this Memorandum as quickly as possible** and keep me closely apprised of your progress."  *See* Exhibit B, Second AG Memo, p. 2 (emphasis added).

Based upon the Attorney General's guidance and directives, under both the first and Second AG Memos, ***Moshe Benenfeld should be released from Devens and transferred to home confinement immediately***.  He is a "vulnerable inmate" and has multiple COVID-19 risk factors, which have been extensively documented.  His confinement plan (below) is suitable and will accomplish the goal of the Attorney General, to "not inadvertently contribute to the spread of COVID-19."  *See* Exhibit B, Second AG Memo, p. 2 (emphasis added).  This Motion must be granted and Benenfeld must be released to home confinement.  It will save his life.

**D.  <u>Benenfeld's Home Confinement Plan</u>**

Upon release from Devens to home confinement, Benenfeld will be picked up by his

daughter, Rochella Treitel ("Rochella"), and driven directly to her home located at 19 Valley
Lane North, Valley Stream, New York 11581.  Rochella's home has a completely separate
apartment (mother/daughter setup) already built and equipped for Benenfeld, which includes a
handicap accessible ramp for Benenfeld's wheelchair and direct access to the street.  For the car
ride, Rochella will provide Benenfeld with an N-95 mask and other personal protective
equipment (PPE), which she will be wearing as well.  Benenfeld will be driven straight to this
apartment, where he will live alone, with no outside interaction.

This arrangement is perhaps the most sterile and safe situation possible for Benenfeld to
survive this pandemic, as Rochella has been in complete isolation and quarantine since March
12, 2020.  As stated above, she also has medical grade PPE and N-95 masks.  Most significantly,
Rochella is a licensed Registered Nurse who understands how to protect herself and Benenfeld
while tending to Benenfeld's medical needs.  This is the sort of arrangement Attorney General
Barr was referring to as "a suitable confinement plan."  *See* Exhibit B, Second AG Memo, p. 2.
It is clear that Benenfeld's home confinement plan is "suitable" and he must be released to home
confinement immediately.

Benenfeld's home confinement plan will keep him much safer from COVID-19 than if he
were to stay at Devens in the midst of the pandemic.  As Chief Judge Colleen McMahon just
stated on April 2, 2020, in granting another inmate's motion for compassionate release from
Devens, "[t]his environment will be ***significantly better than Devens FMC, where despite the
BOP's best efforts, [defendant] Mr. Resnick is constantly at risk from contamination both
from within and without the prison walls, and where access to PPE for inmates is essentially
non-existent***."  *United States v. Resnick*, 14 Cr. 810 (CM), 2020 WL 1651508, at *8 (S.D.N.Y.
April 2, 2020) (emphasis added).  In that case, Chief Judge McMahon granted the defendant

Resnick's motion for compassionate release, where his confinement plan was very similar to Benenfeld's.[11]  *See United States v. Resnick*, 14 Cr. 810 (CM), 2020 WL 1651508, at *7-8. Benenfeld is within the category of people for whom protective masks and other PPE gear is a necessity during the COVID-19 pandemic.  If the BOP cannot supply Benenfeld with these necessary, life-saving protections while he is in their custody, Benenfeld must be released to home confinement, where Rochella Treitel can.

## ARGUMENT

## POINT I

## EXHAUSTION OF ADMINISTRATIVE REMEDIES UNDER 18 U.S.C. § 3582(c)(1)(A) IS WAIVED BECAUSE OF THE URGENT RISK OF FATAL INFECTION

In its opposition, the Government argues the Benenfeld's Motion for Compassionate Relief should be denied without prejudice on the grounds that he has not exhausted all of his administrative remedies.  The primary support brought for this argument are nonbinding cases from outside the Second Circuit and the Government's assertion that the Second Circuit cases *Perez* and *Colvin*, which ruled in similar circumstances that exhaustion is waived, are wrong.

The Government attempts to convince the Court of its position by stating the "vast majority of district courts have required exhaustion despite COVID-19 claims."  Despite this being a major basis for the Government's argument, it is quite simply wrong.  ***The Government fails to note the many cases around the country that have waived exhaustion for one reason or another and granted immediate release***.  *See United States v. Wilson Perez*, No. 17 Cr. 513

---

[11]     "Resnick's proposed release plan provides that: Mr. Resnick's wife Amy, who lives a little over an hour from the facility, would pick Resnick up in her car.  She would provide him with an N-95 mask (and will wear the same herself), as well as other personal protective equipment (PPE) to cover him completely during the journey to her apartment.  Resnick would reside with his wife in their two bedrooms and two bathroom apartment: allowing Resnick to fulfill a decontamination protocol upon arrival, and complete a period of self-quarantine."  *See United States v. Resnick*, *supra*, 14 Cr. 810 (CM), 2020 WL 1651508, at *1-2.

(AT), 2020 WL 1546422, at * 3 (S.D.N.Y. Apr. 1, 2020) (granting release based on health issues and finding court could waive exhaustion requirement; government did not object based on defendant's medical conditions); *see also United States v. Eli Dana*, No. 14 Cr. 405 (JMF), ECF Docket No. 108 (S.D.N.Y. Mar. 31, 2020) (granting compassionate release motion without exhaustion of administrative remedies, where government consented); *see also United States v. Jose Maria Marin*, No. 15 Cr. 252 (PKC), ECF Docket No. 1325-1326 (E.D.N.Y. Mar. 30, 2020) (waiving exhaustion requirement and granting compassionate release to defendant based on special risks he faced from COVID-19); *see also United States v. Anton Jepsen* No. 3 19 Cv. 00073 (VLB), 2020 WL 1640232, at *3 (D. Conn. Apr. 1, 2020) (finding exhaustion due to not being in a BOP facility and granting release); *see also United States v. Pedro Muniz*, No. 09 Cr. 199, ECF Docket No. 578 (S.D. Tex. Mar. 30, 2020) (granting compassionate release based on health conditions that made inmate susceptible to COVID-19; inmate had pending application, so had exhausted administrative process); *see also United States v. Samuel H. Powell*, No. 94 Cr. 316 (ESH), ECF Docket No. 97 (D.D.C. Mar. 27, 2020) (granting compassionate release for 55 year old defendant with respiratory problems in light of COVID-19 outbreak, without waiting for 30 days or other exhaustion of administrative remedies through the BOP); *see also see also United States v. Teresa Ann Gonzalez*, No. 18 Cr. 232 (TOR), ECF Docket No. 834 (E.D. Wa. Mar. 25, 2020) (waiving any further exhaustion attempts as futile and granting compassionate release based on defendant's health issues and COVID-19 pandemic); *see also United States v. Agustin Francisco Huneeus*, No. 19 Cr. 10117 (IT), ECF Docket No. 642 (D. Mass. Mar. 17, 2020) (granting defendant's emergency motion based on COVID-19).

However, the Government also completely ignores the more relevant subset of cases, which have been decided within the Second Circuit.  These cases overwhelmingly support two

different courses of action, neither of which the Government even mentions. The first subset of cases include the *Perez* and *Colvin* cases, which were both discussed in Benenfeld's initial moving papers. The reasoning in those cases, that exhaustion would be futile because the undue delay would result in health consequences, has now been adopted by yet another Second Circuit case. In *United States v. Morris Zukerman*, Judge Analisa Torres noted that "even a few weeks' delay carries the risk of catastrophic health consequences for Zukerman," deemed the exhaustion requirement waived and granted Zuckerman's motion for compassionate release. *United States v. Morris Zukerman*, No. 16 Cr. 194 (AT), 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020). The same is true here. As the world is aware of at this point, the spread of COVID-19 is exponential and is spreading through the BOP even quicker than through the general population.[12] In just a few short weeks or even days, it could lead to catastrophic health consequences for Moshe Benenfeld or even death.

The second significant way courts in the Second Circuit have been addressing the exhaustion requirement is by demanding the BOP give answers and make decisions on the applications filed by prisoners. For instance, in *United States v. Gross*, on April 6, 2020, the Court issued an order stating,

> The Court expects BOP to be able to finally resolve Mr. Gross's request by April 9, 2020 – one week after the Warden at USP Canaan confirmed receipt of his request . . . Under such circumstances, 30 days is anything but 'exceptionally quick' – indeed, each day, perhaps each hour, that elapses 'threatens incarcerated defendants with greater peril.'

*United States v. Gross*, 1:15 Cr. 00769, 2020 WL 1673244, at *3 (S.D.N.Y. Apr. 6, 2020);

---

[12]     *See* Lisa Freeland, David Patton and Jon Sands, *We'll see many more covid-19 deaths in prisons if Barr and Congress don't act now*, The Washington Post (April 6, 2020), available at https://www.washingtonpost.com /opinions/2020/04/06/covid-19s-threat-prisons-argues-releasing-at-risk-offenders/; *see also* Chart, *Percentage of Increase of Infected BOP People (Inmates and Staff) Since 3/20/2020* and Chart, *Percentage of Infected People Since 3/20/2020* (updated daily), available at https://federaldefendersny.org/.

quoting *United States v. Russo*, No. 16 Cr. 441 (LJL), ECF Docket No. 54 at 5 (S.D.N.Y. Apr. 3, 2020) (where the Court also demanded answers from BOP regarding the defendant's application to the warden for compassionate relief).  "Requiring defendants to await the lapse of the ***full*** 30 days from receipt of their requests by the wardens of their facilities may pervert congressional intent by transforming the 30-day rule into an obstacle – rather than an accelerant – to judicial review, and result in irreparable harm to defendants."  *United States v. Gross*, *supra*, 2020 WL 1673244, at *3 (internal citations omitted); *see also United States v. Russo*, *supra*, No. 16 Cr. 441 (LJL), ECF Docket No. 54 at 5; *see also United States v. Nkanga Nkanga*, 18 Cr. 713 (JMF), ECF Docket No. 104 at 2 (S.D.N.Y. Apr. 3, 2020); *see also United States v. William Knox*, 15 Cr. 445 (PAE), ECF Docket No. 1078 (S.D.N.Y.) (after receiving motion for compassionate release on April 2, 2020 the Court demanded a statement from the BOP by April 6, 2020 as to when a decision would be made and indicated that April 10 was the deadline for such a decision); *see also United States v. Park*, 16 Cr. 00473, ECF Docket No. 104 (S.D.N.Y.) (on April 7, 2020, the Court demanded an answer from BOP by April 10, 2020 on what their determination is on compassionate release noting "If the Government notifies the Court that the BOP has not made a final determination by April 10, the Court will promptly consider Ms. Park's motion, including her exhaustion arguments, at that time"); *see also United States v. Jasper*, 18 Cr. 00390, ECF Docker Nos. 439-441 (S.D.N.Y.) (on April 4, 2020, the Court demanded an opposition be filed by April 7, 2020 and demanded to know, if the Government raises exhaustion in opposition, why the Government raised it in this case but not in other recent cases, including what the distinctions between the cases are.  Under such circumstances, the Government did not oppose defendant's motion and defendant was ordered released); *see also United States v. Sezanayev*, 1:17 Cr. 00262 (LGS) (S.D.N.Y.) (on April 3, 2020, the Court issued

11

an order demanding a decision from the BOP by April 7, 2020 on the defendant's administrative application); *see also Chun v. Edge*, 20 Cv. 1590 (RPK) (E.D.N.Y.) (where the Court required the BOP to give an update by April 7, 2020 as to whether an administrative decision had been reached and if not, advise the Court when final decisions will be reached).

Thus, even if this Court does not follow the precedent and hold like the other Second Circuit courts held in *Perez*, *Colvin* and *Zukerman*, this Court should still follow the other line of cases in the Second Circuit and force the BOP to give an answer to Benenfeld's request this week.  If the Court were to give the BOP until April 10, 2020, to provide a firm answer and decision on Benenfeld's application filed with the Warden of Devens, that would be a full two weeks since his application was filed, on March 27, 2020.  That time is actually double the time given to the BOP to provide an answer in the *Gross* case.  If the Court does not find that exhaustion is futile, by forcing a response from the BOP, the Court can essentially moot the exhaustion argument that the Government raises.

## POINT II

### THIS COURT HAS AUTHORITY TO RESENTENCE BENENFELD UNDER 18 U.S.C. § 3582(c)(1)(A)(i) FOR THE "EXTRAORDINARY AND COMPELLING REASONS" CREATED BY THE COVID-19 PANDEMIC AND PRISON CONDITIONS WHICH PREVENT SELF-CARE FOR A HIGH-RISK PATIENT

Under 18 USC § 3582(c), Courts are authorized to consider a defendant's motion, even if the BOP opposes it, and order resentencing or modification if it finds that "extraordinary and compelling reasons" warrant a reduction and such a reduction is consistent with the Section 3553(a) factors.  *See* 18 USC § 3582(c).  The Government cites one single, unreported order in *United States v. Credidio*, 19 Cr 111 (PAE) (S.D.N.Y. Mar. 30, 2020) as to why Moshe Benenfeld cannot show extraordinary and compelling reasons under the 3553(a) factors.  However, once again, the Government misses its mark and *Credidio* can be distinguished.

12

The order which the Government relies on in *Credidio* can be found in that case at ECF Docket No. 62.  In that order, the Court asked the parties whether it could order a release during the pendency of the COVID-19 pandemic.  In response, the defendant raised a habeas argument as to why the Court would have the power to grant a temporary release.  The order at ECF Docket No. 66 address that habeas argument, not the 3553(a) factors.  Nevertheless, the original application seeking compassionate release in *Credidio* does not note the specific health factors that Benenfeld has identified regarding his vulnerability to COVID-19.

In addition, in Benenfeld's application, as opposed to *Credidio*, it is clear that the conditions of Devens are dangerous to Benenfeld.  Benenfeld shares a room with three others, living in close proximity to each other.  All four share one bathroom.  The inmates are not allowed to leave their unit unless an officer escorts them off, forcing many people to crowd into smaller spaces.  Medical visits to the clinic, which Benenfeld used to have several times per week, are now suspended and a nurse occasionally comes to him to change his ostomy bag at his bedside, which is completely unhygienic.

These factors were not highlighted in the *Credidio* application.  However, these factors are considered to be important in other, actually reported, Second Circuit cases regarding compassionate release due to COVID-19.  For instance, in *United States v. Morris Zuckerman*, the Court noted many of the factors which Benenfeld has demonstrated – mainly the severe health issues of the defendant and the fast spread of COVID-19 – and granted compassionate release, noting "[t]he severity of Zukerman's conduct remains unchanged.  What has changed, however, is the environment where Zukerman is serving his sentence.  ***When the Court sentenced Zukerman, the Court did not intend for that sentence to 'include incurring a great and unforeseen risk of severe illness or death' brought on by a global pandemic***."  *United*

13

*States v. Morris Zuckerman*, No. 16 Cr. 194 (AT), 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020).

Similarly, in *United States v. Resnick*, Chief Judge McMahon noted that the defendant had severe documented medical problems making him vulnerable to COVID-19.  *See United States v. Resnick*, No. 12 Cr. 0152 (CM), 2020 WL 1651508, at *7 (S.D.N.Y. Apr. 2, 2020).  In *Resnick*, the defendant was being held at Devens, the same facility that Benenfeld is being held at.  Chief Judge McMahon noted that there are many "limitations in a prison environment (***even a prison medical center***) on practicing the hygienic and social distancing techniques that the Center for Disease Control has put in place to prevent rapid transmission." *United States v. Resnick*, *supra*, 2020 WL 1651508, at *6 (emphasis added).  Based on these considerations, the Court found that the defendant had shown extraordinary and compelling reasons to warrant release.  *United States v. Resnick*, *supra*, 2020 WL 1651508, at *7; *see also United States v. Campagna*, 16 Cr. 78-01 (LGS), 2020 WL 1489829, at *1 (S.D.N.Y. Mar. 27, 2020) ("Defendant's compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify to Defendant's sentence on the grounds that he is suffering from a serious medical condition that substantially diminishes his ability to provide self-care within the environment of the RCC."  The court also noted that, like here, the defendant was not a danger to the public).

It goes without saying that Benenfeld meets other factors frequently mentioned in Second Circuit cases finding extraordinary and compelling reasons warranting release, namely that Benenfeld is a first time, non-violent offender who presents no risk to the public.  *United States v. Resnick*, *supra*, 2020 WL 1651508, at *7 (S.D.N.Y. Apr. 2, 2020) (granting release to defendant who was a first time, non-violent offender); *see also United States v. Campagna*, 2020

14

WL 1489829, *supra*, at *1 (noting defendant was not a danger to the public in granting release); *see also United States v. Daniel Hernandez*, No. 18 Cr. 834-04 (PAE), 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020) (finding defendant to no longer be a danger to the community and granting release).

It should be stressed that Moshe Benenfeld is not requesting to be let off from his sentence, nor is he denying the severity of his conduct.  The Court in *United States v. Daniel Hernandez* observed that "the conditions of Mr. Hernandez's forthcoming home confinement will meaningfully restrict his freedom of movement."  *United States v. Daniel Hernandez*, 2020 WL 1684062, *supra*, at *3 (S.D.N.Y. Apr. 2, 2020).  Benenfeld will similarly continue to have his freedom of movement meaningfully restricted.  This is on top of the severe consequences he has already faced – including his bar from working at any FDIC insured institution.  However, the changing environment due to COVID-19 would essentially sentence Benenfeld to death if he remains in a federal prison.  If his sentence is modified to home confinement, Benenfeld will continue to face the consequences of his crime while being able to protect himself from the serious health risk posed by COVID-19.

In summary, as is outlined in detail in the original moving papers, Moshe Benenfeld has clearly met the standard for extraordinary and compelling reasons to be released to home confinement due to the COVD-19 pandemic and this Motion should therefore be granted.  The Government does not contradict Benenfeld's severe health issues, which essentially mean that if he contracts COVID-19, which is more likely than not while in prison, he will suffer very catastrophic health consequences, including likely death.  The Government presents no proof from someone with personal knowledge that Devens can adequately protect Benenfeld from COVID-19, while Chief Judge McMahon in the *Resnick* case firmly dispelled any notion that

Devens can protect a vulnerable individual from COVID-19.  The Government similarly does not dispute that Benenfeld is a first time, non-violent offender who poses no risk to the public and who was not held during the pendency of his case prior to his surrender.  Finally, the Government does not contradict that, though Benenfeld's conduct was severe, ***the circumstances of confinement have drastically changed*** and that even with a modification of his sentence, Benenfeld has already faced severe consequences and that home confinement meaningfully restricts his freedom so that he will continue to face severe consequence as he serves out his sentence.  Therefore, it is clear that Moshe Benenfeld has satisfied the extraordinary and compelling reasons factors of Section 3553(a) as have been analyzed by recent cases in the Second Circuit dealing with the COVID-19 outbreak.

<u>**CONCLUSION**</u>

WHEREFORE, for the foregoing reasons, I respectfully request that the Court: a) grant Defendant Moshe Benenfeld's Motion for Compassionate Release, pursuant to 18 U.S.C.A. § 3582(C)(1)(A)(i), in its entirety; b) issue an Order reducing and modifying Benenfeld's sentence to time served with an extended period of supervised release of 4 years and 3 months (to cover the unserved portion of his prison term), with a condition of home incarceration and confinement and G.P.S. monitoring; and c) grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
      April 8, 2020

                              **TWERSKY PLLC**

By: _____

                    Aaron Twersky, Esq.
                    Jason Lowe, Esq.
                    Ilana Neufeld, Esq.

16

747 Third Avenue, 32nd Floor
New York, New York 10017
(212) 425-0149
atwersky@twerskylaw.com (email)
jlowe@twerskylaw.com (email)
ineufeld@twerskylaw.com (email)

*Attorneys for Defendant*
*Moshe Benenfeld*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

UNITED STATES OF AMERICA,                            Case No: 18-CR-485 (LAP)

                        -against-

MOSHE BENENFELD,

                              Defendant.

-------------------------------------------------------------------------x

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT MOSHE BENENFELD'S MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A)

**TWERSKY PLLC**
747 Third Avenue, 32nd Floor
New York, New York 10017
(212) 425-0149

*Attorneys for Defendant Moshe Benenfeld*